# United States Court of Appeals for the Federal Circuit

---

**CREDIT ACCEPTANCE CORP.,**
*Appellant*

**v.**

**WESTLAKE SERVICES,**
*Appellee*

---

2016-2001

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. CBM2014-00176.

---

Decided: June 9, 2017

---

DOUGLAS R. NEMEC, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, argued for appellant. Also represented by PARAMJEET SAMMI, ANDREW GISH; JAMES Y. PAK, Palo Alto, CA.

JOHN DAVID VAN LOBEN SELS, Fish & Tsang LLP, Redwood City, CA, argued for appellee. Also represented by JENNIFER SHIH.

SARAH E. CRAVEN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor Joseph Matal. Also represented by

NATHAN K. KELLEY, FRANCES LYNCH, SCOTT WEIDENFELLER.

———————————

Before DYK, MAYER, and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Opinion dissenting-in-part filed by *Circuit Judge* MAYER.

DYK, *Circuit Judge.*

Credit Acceptance Corp. ("CAC") appeals the final written decision of the Patent Trial and Appeal Board ("Board") in a Covered Business Method ("CBM") review proceeding. The Board determined that claims 10–12 and 14–33 of CAC's U.S. Patent No. 6,950,807 B2 ("the '807 patent") are directed to patent-ineligible subject matter under 35 U.S.C. § 101. CAC appeals the Board's determination that the petitioner, Westlake Services, LLC ("Westlake"), was not estopped from maintaining CBM review of those claims under 35 U.S.C. § 325(e)(1). CAC also appeals the Board's § 101 determination. Because we agree with the Board that Westlake was not estopped from maintaining CBM review of those claims and that the challenged claims are unpatentable under § 101, we affirm.

BACKGROUND

CAC is the assignee of the '807 patent, which includes both system and method claims directed to "provid[ing] financing for allowing a customer to purchase a product selected from an inventory of products maintained by a dealer." '807 patent, abstract. In one embodiment, the products are vehicles for sale at a car dealership. The invention involves, *inter alia*, "maintaining a database of the dealer's inventory," gathering financing information from the customer, and "presenting a financing package to the dealer for each individual product in the dealer's inventory." *Id.*

Certain claims, such as the claims at issue here, involve the application of these steps using elements such as a "database," a "user terminal," and a "server." For example, representative claim 25 provides,

25. A system for generating financing packages provided by a financing party, for a customer purchase of a product from a dealer's inventory of a plurality of products, the system comprising:

a database for storing information related to products in the dealer's inventory including a dealer cost associated with each product;

a user terminal, communicatively coupled to said database, for receiving financial information about the customer in relation to said products; and

a server having access to the data in the database adapted to communicate with the user terminal over a network, whereby the financial information about the customer may be transmitted to the server,

the server generating a financing package for each product in the dealer's inventory and transmit financing terms for each financing package to the user terminal via the network for presentation to the user for immediate purchase, wherein the server is further configured such that the financing terms of each financing package include an advance amount to be paid to the dealer by said financing party if the customer purchases the product associated with the financing package.

'807 patent, col. 15 ll. 17–38.

Relevant to this appeal are two CBM review proceedings involving the '807 patent and the same petitioner (Westlake).  In the first proceeding, Westlake petitioned for CBM review of all claims (1–42) of the '807 patent, asserting that the claims are ineligible for patenting under 35 U.S.C. § 101.  On March 31, 2014, in a decision that pre-dated the Supreme Court's decision in *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347 (2014), the Board instituted review based on the § 101 grounds but with respect to fewer than all of the challenged claims.  The Board instituted review of claims 1–9, 13, and 34–42, but it did not institute review of claims 10–12 and 14–33 (the claims now at issue).  The Board was unpersuaded that claims 10–12 and 14–33 were more likely than not ineligible under this court's then-prevailing decision in *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335 (Fed. Cir. 2013) ("*Ultramercial II*").

Nearly three months later, the Supreme Court issued *Alice* and vacated the *Ultramercial II* decision relied upon by the Board.  *WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014).  On August 20, 2014, in view of the developments in § 101 jurisprudence, Westlake filed a second petition for CBM review, again challenging claims 10–12 and 14–33 as patent-ineligible under § 101.[1]  On November 14, 2014, we issued a revised *Ultramercial* decision, *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) ("*Ultramercial III*"), holding the claims in that case patent-ineligible under § 101.  Noting recent authority on § 101 from the Supreme Court and Federal Circuit (including the new *Ultramercial III* decision), the Board instituted review of claims 10–12 and 14–33,

---

[1]   The second petition also challenged all claims 1–42 under 35 U.S.C. § 112.  As in the first proceeding, the Board declined to institute review on these grounds, and they are not relevant to this appeal.

concluding that it was "more likely than not that [the challenged claims] are directed to abstract ideas with no inventive concept." J.A. 938.

In its institution decision, the Board rejected CAC's argument that the existence of the first CBM proceeding estopped Westlake from challenging claims 10–12 and 14–33 under 35 U.S.C. § 325(e)(1). The Board's determination was based on the fact that the first proceeding had not yet resulted in a final written decision, and therefore, CAC's estoppel argument was not ripe.

The first and second instituted CBM proceedings continued in parallel until March 24, 2015, when the Board issued a final written decision in the first proceeding concluding that claims 1–9, 13, and 34–42 of the '807 patent are unpatentable under 35 U.S.C. § 101.[2] On April 9, 2015, CAC moved to terminate the second proceeding, again urging that Westlake was estopped from challenging claims 10–12 and 14–33 under § 325(e)(1) now that the Board had issued a final written decision in the first proceeding. The Board denied CAC's motion, explaining that estoppel under § 325(e)(1) applies on a claim-by-claim basis and that the final written decision in the first proceeding had only ruled upon claims 1–9, 13, and 34–42. Because that final written decision did not rule upon non-instituted claims 10–12 and 14–33, Westlake was free (for purposes of estoppel) to maintain its challenge to those claims in the second proceeding.

On January 25, 2016, the Board issued a final written decision in the second CBM proceeding concluding that claims 10–12 and 14–33 of the '807 patent are unpatentable under 35 U.S.C. § 101.

---

[2] CAC does not challenge the final written decision from the first proceeding in this appeal.

CAC appeals that decision. It asserts that Westlake should have been estopped from maintaining its challenge to claims 10–12 and 14–33 and argues that the Board's § 101 decision was in error. Westlake opposes, and the United States Patent and Trademark Office ("PTO") has intervened to support the Board's decision on all issues. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A). "We review the Board's factual findings for substantial evidence and its legal conclusions de novo." *Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1314 (Fed. Cir. 2016).

DISCUSSION

I

CAC first argues that estoppel applies here to bar Westlake from challenging claims 10–12 and 14–33 of the '807 patent in light of the prior CBM proceeding which was instituted on different claims. CBM review proceedings are governed by section 18 of the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, § 18, 125 Stat. 284, 329–31 (2011), which adopts the "chapter 32 provisions of title 35 of the U.S. Code, governing post-grant review ('PGR')." *SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1312 (Fed. Cir. 2015).[3] Under those PGR procedures, a CBM review proceeds in stages: first, the Board decides whether to institute a review, and second, if review is instituted, the proceeding enters a trial stage and the Board later issues a "final written decision" under 35 U.S.C. § 328(a). Once the Board issues a final written decision, the estoppel statute applies. The PGR estoppel

---

[3]    *See* AIA § 18(a)(1), 125 Stat. 284, 329 ("The transitional [CBM] proceeding implemented pursuant to this subsection shall be regarded as, and shall employ the standards and procedures of, a post-grant review under chapter 32 of title 35, United States Code.").

statute relevant here, which also governs CBM review proceedings under AIA § 18, provides,

> PROCEEDINGS BEFORE THE OFFICE.—The petitioner in a post-grant review of a claim in a patent under this chapter that results in a final written decision under section 328(a), or the real party in interest or privy of the petitioner, may not *request or maintain* a proceeding before the Office with respect to that claim on any ground that the petitioner raised or reasonably could have raised during that post-grant review.

35 U.S.C. § 325(e)(1) (emphasis added).

## A

As a threshold matter, both Westlake and the PTO argue that a determination by the Board on 35 U.S.C. § 325(e)(1) is nonappealable, and therefore, this court has no jurisdiction to review the Board's estoppel determination. We disagree.

The PTO relies on 35 U.S.C. § 324(e), which provides, "[t]he determination by the Director whether to institute a post-grant review under this section shall be final and nonappealable." The PTO asserts that the Board's estoppel decision is akin to a decision to institute review, which is nonappealable. In *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016), the Supreme Court considered the parallel "no appeal" statute for inter partes review ("IPR") proceedings, 35 U.S.C. § 314(d), and held that Board decisions are nonappealable "where the grounds for attacking the decision to institute inter partes review consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review." *Id.* at 2141. The Court described possible exceptions to this rule where review may be available:

> [W]e need not, and do not, decide the precise effect of § 314(d) on appeals that implicate constitutional questions, that depend on other less closely related statutes, or that present other questions of interpretation that reach, in terms of scope and impact, well beyond "this section." Thus, . . . we do not categorically preclude review of a final decision where a petition fails to give "sufficient notice" such that there is a due process problem with the entire proceeding, nor does our interpretation enable the agency to act outside its statutory limits by, for example, canceling a patent claim for "indefiniteness under § 112" in inter partes review.

*Id.* at 2141–42 (citations omitted).

Applying these principles, the Court held that the Federal Circuit may not review a Board decision to institute IPR proceedings on the basis that the petition did not satisfy the requirements of 35 U.S.C. § 312(a)(3), which states that the petition must identify the grounds of challenge "with particularity." 136 S. Ct. at 2142. The Court explained that an argument that the "petition was not pleaded 'with particularity' under § 312 is little more than a challenge to the Patent Office's conclusion, under § 314(a), that the 'information presented in the petition' warranted review." *Id.*

The estoppel provision at issue here, § 325(e)(1) (like the comparable IPR provision, § 315(e)(1)), is distinct from the issues addressed in *Cuozzo*. Specifically, § 325(e)(1) does not refer to "institution" decisions and in fact is not limited to institution decisions. While the appeal bar precludes review of a "request" for proceedings, which might be analogized to an institution decision, on its face, § 325(e)(1) contemplates that estoppel governs at any stage of a subsequent proceeding before the PTO—its application is not limited to the institution stage. Section

325(e)(1) provides that an estopped petitioner "may not request *or maintain* a proceeding before the office." *Id.* (emphasis added). As the posture of this case demonstrates, in some situations § 325(e)(1) could operate to terminate a proceeding even where there existed no cause for termination at the time a petition was instituted (as was the case here).

We recently addressed similar language in pre-AIA 35 U.S.C. § 317(b) (2006), which governed estoppel applicable to inter partes reexamination proceedings. Section 317(b) provided that "[o]nce a final decision has been entered against a party" in a civil action "that the party has not sustained its burden of proving the invalidity of any patent claim," then "an inter partes reexamination requested by that party or its privies on the basis of [issues the party raised or could have raised in district court] may not thereafter be *maintained* by the [PTO]." *Id.* (emphasis added). In *In re Affinity Labs of Texas, LLC*, 856 F.3d 883 (Fed. Cir. 2017), we held that the "maintain" language of § 317(b) applies to terminate an inter partes reexamination proceeding that had already been granted where a final decision issues in a civil action during the pendency of that proceeding. *Id.* at 893. This case supports giving a similar interpretation to the "maintain" language here.

Moreover, the estoppel effect created by § 325(e)(1) after the Board issues a final written decision is not specifically directed to subsequent CBM proceedings; instead it applies generally to any "proceeding before the Office,"[4]

---

[4]    As the legislative history suggests, Congress was just as concerned about applying estoppel to subsequent ex parte reexamination proceedings as in IPR (or CBM) proceedings. *See* H.R. Rep. No. 112-98, at 47 (2011) (explaining that under the parallel estoppel statute applicable to IPR proceedings, "[a] party that uses inter

and AIA § 18(a)(1)(D) applies estoppel to subsequent district court and International Trade Commission ("ITC") proceedings as well. As a practical matter, it would be inconsistent to hold that a Board decision on estoppel under § 325(e)(1) is nonappealable but that a decision on estoppel under the parallel provision applicable to district court and ITC proceedings is appealable.

Similar to § 325(e)(1), which applies to proceedings before the PTO, AIA § 18(a)(1)(D) provides,

> [t]he petitioner in a [CBM] proceeding that results in a final written decision . . . may not assert, either in a civil action arising in whole or in part under section 1338 of title 28, United States Code, or in a proceeding before the International Trade Commission under section 337 of the Tariff Act of 1930 (19 U.S.C. 1337), that the claim is invalid on any ground that the petitioner raised during that transitional proceeding.

There is no suggestion that this court lacks jurisdiction to consider estoppel issues stemming from a final written decision under this statute in the context of subsequent district court and ITC proceedings. Applying different appealability standards between the Board and district courts (and the ITC) could lead to conflicting outcomes. For instance, after a final written decision, if the petitioner raised identical arguments in both a subsequent CBM review and in district court and the Board and court reach different conclusions as to estoppel, only the court's decision would be appealable. And if, on appeal from the district court, the Federal Circuit were to decide contrary

---

partes review is estopped from raising in a subsequent PTO proceeding (such as an ex parte reexam or inter partes review) any issue that it raised or reasonably could have raised in the inter partes review").

to the Board's conclusion, there is no clear mechanism for correcting the Board.[5]  This practical need for uniformity weighs strongly in favor of appealability.

For all of these reasons, the estoppel dispute in this case is neither a challenge to the Board's institution decision, nor is it "closely tied" to any "statute[] related to the Patent Office's decision to initiate [CBM] review." *Cuozzo*, 136 S. Ct. at 2141.

Westlake nonetheless argues that this court may review only a *final written decision* of the Board, and the order denying CAC's motion to terminate is not a final written decision.  This argument flows from 35 U.S.C. § 141(c), which provides,

> A party to an inter partes review or a post-grant review *who is dissatisfied with the final written decision* of the Patent Trial and Appeal Board under section 318(a) or *328(a)* (as the case may be) *may appeal the Board's decision* only to the United States Court of Appeals for the Federal Circuit.

35 U.S.C. § 141(c) (emphasis added).  Section 328(a), in turn, provides that the "Board shall issue a final written decision with respect to the patentability" of the challenged claims.  35 U.S.C. § 328(a).  Westlake argues that under these statutes, a dissatisfied party may appeal only a final written decision with respect to patentability, relying on *GTNX, Inc. v. INTTRA, Inc.*, 789 F.3d 1309 (Fed. Cir. 2015).

---

[5]  We recognize that there are some linguistic differences in the scope of estoppel between the two provisions, § 325(e)(1) and AIA § 18(a)(1)(D).  It suffices for our analysis that estoppel is triggered by a CBM final written decision with respect to both other proceedings before the PTO and district court (and ITC) proceedings.

In *GTNX*, the Board instituted CBM review but later determined that its institution decision was in error. *Id.* at 1311. The Board vacated the institution decision and terminated review without issuing a final written decision. *Id.* The petitioner appealed. The court dismissed the appeal for lack of jurisdiction, characterizing the Board's vacatur decision as a decision whether to institute proceedings and holding that there was no appealable final written decision with respect to patentability within the meaning of 35 U.S.C. § 141(c). *See GTNX*, 789 F.3d at 1311–12; *see also Medtronic, Inc. v. Robert Bosch Healthcare Sys., Inc.*, 839 F.3d 1382, 1385–86 (Fed. Cir. 2016) (applying *GTNX* to an IPR proceeding).

Here, the Board did issue a final written decision with respect to patentability, and CAC appeals that decision. Because the statute prohibits an estopped petitioner from "maintain[ing]" a proceeding, the Board necessarily found that Westlake was not estopped when it issued its final written decision. *See* 35 U.S.C. § 325(e)(1).

We conclude that we have jurisdiction to review the CAC's estoppel argument regarding 35 U.S.C. § 325(e)(1).

B

We turn to the merits of CAC's estoppel argument. CAC points out that estoppel applies under 35 U.S.C. § 325(e)(1) with respect to a claim previously subject to a "review of [that] claim . . . that results in a final written decision under section 328(a)." Then CAC suggests that a final written decision under 35 U.S.C. § 328(a) covers all claims "challenged" in a petition, not only the claims that were instituted for review. That section provides,

> FINAL WRITTEN DECISION.—If a post-grant review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision with respect to the patentability of any patent claim *challenged* by the peti-

tioner and any new claim added under section 326(d).

35 U.S.C. § 328(a) (emphasis added). CAC argues that, read together, the statutes require that estoppel applies to *all* claims challenged in a petition where any portion of the petition results in a final written decision, even if fewer than all of the challenged claims are instituted for review and explicitly ruled upon in that decision. In short, "a final written decision triggers estoppel not only for instituted claims, but also non-instituted claims." CAC Opening Br. 16.

CAC's argument is foreclosed by our decision in *Synopsys*, which interpreted statutory language in the IPR context that is identical to language in the provisions governing CBM proceedings. As the *Synopsys* court recognized, "[t]he validity of claims for which the Board did not institute inter partes review can still be litigated in district court," and this caused "no inconsistency" with the AIA estoppel provisions. 814 F.3d at 1316; *see also* 35 U.S.C. § 315(e)(2) (IPR estoppel provision applicable to subsequent civil actions). It equally follows that there is no estoppel in future PTO proceedings.

In *Synopsys*, we held that, under the statute and the PTO's regulations, the Board may institute an IPR on a claim-by-claim basis, such that "the Board can pick and choose among the claims in the decision to institute." 814 F.3d at 1316. The court also explained that 35 U.S.C. § 318(a) (which is identical in all relevant aspects to § 328(a)) "only requires the Board to address claims as to which review was granted" in a final written decision. 814 F.3d at 1317. Therefore, a final written decision on instituted claims is not a final determination on the patentability of non-instituted claims. *See* 814 F.3d at 1315.

Because a final written decision does not determine the patentability of non-instituted claims, it follows that

estoppel does not apply to those non-instituted claims in future proceedings before the PTO. On its face, the relevant IPR estoppel statute, § 315(e)(1) (similar to the PGR estoppel statute, § 325(e)(1)) applies on a claim-by-claim basis. It provides, "[t]he petitioner in an inter partes review *of a claim* in a patent . . . that results in a final written decision under section 318(a) . . . may not request or maintain a proceeding before the Office *with respect to that claim* . . . ." 35 U.S.C. § 315(e)(1) (emphasis added). There is no IPR estoppel with respect to a claim as to which no final written decision results. *See id.*; *see also Affinity Labs*, 856 F.3d at 893 (holding that pre-AIA 35 U.S.C. § 317(b) (2006), which estops a losing litigant from requesting or maintaining a subsequent "inter partes reexamination of any such patent claim" applies on a claim-by-claim basis).

This conclusion is reinforced by this court's decision in *Shaw Industries Group, Inc. v. Automated Creel Systems, Inc.*, 817 F.3d 1293 (Fed. Cir. 2016). In *Shaw*, the petitioner requested IPR of certain claims on three separate grounds. *Id.* at 1296. The Board instituted review on two of the grounds and denied the petition with respect to the third (the "Payne-based" ground). *Id.* at 1296–97. Later, the Board issued a final written decision upholding the claims over the two instituted grounds. *Id.* at 1297. On appeal, the court denied the petitioner's request for mandamus relief, explaining that the petitioner would not be estopped from pursuing a Payne-based challenge to the claims in future proceedings. *Id.* at 1300. The court explained that the IPR estoppel statute only applies to "any ground that the petitioner raised or reasonably could have raised *during*" the first review. *Id.* at 1300 (quoting 35 U.S.C. § 315(e)). Because "the PTO denied the petition as to [the Payne-based ground], . . . no IPR was instituted on that ground," and thus, the petitioner "did not raise— nor could it have reasonably raised—the Payne-based ground *during* the IPR." *Id.*; *see also HP Inc. v. MPHJ*

*Tech. Invs., LLC*, 817 F.3d 1339, 1347 (Fed. Cir. 2016) (following *Shaw*).

The holdings in *Synopsys* and *Shaw* with respect to IPRs apply to the PGR statutes and regulations as well since the PGR provisions contain identical language. *Compare* 35 U.S.C. §§ 314(a), 315(e)(1), *and* 37 C.F.R. § 42.108, *with* 35 U.S.C. §§ 324(a), 325(e)(1), *and* 37 C.F.R. § 42.208. The IPR statutes and PGR statutes (as adopted into the CBM framework) were all enacted simultaneously in the AIA. "[T]he normal rule of statutory interpretation [is] that identical words used in different parts of the same statute are generally presumed to have the same meaning." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005). To be sure, despite the parallel nature of the IPR and CBM provisions, there are significant structural differences in the overall schemes, but none of these differences is relevant here. Accordingly, we adopt the reasoning and conclusions of our IPR cases.

CAC presents a host of policy arguments supposedly supporting a contrary result. "Such policy arguments are more properly addressed to legislators or administrators, not to judges." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 864 (1984); *see also SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 967 (2017). In any event, these and similar concerns are adequately addressed by 35 U.S.C. § 325(d), which provides the Director with discretion to "take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office."

We conclude that 35 U.S.C. § 325(e)(1) does not apply in a subsequent proceeding to claims upon which the Board declined to institute review. Accordingly, Westlake was not estopped from challenging claims 10–12 and 14–33 of the '807 patent on the basis of 35 U.S.C. § 101.

II

CAC argues that the Board erred in determining that claims 10–12 and 14–33 of the '807 patent are ineligible for patenting. We review the Board's conclusions with respect to patent eligibility under § 101 de novo. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1236 (Fed. Cir. 2016). "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. However, one may not obtain a patent on an abstract idea. To determine whether the claims are patent-eligible, the court performs a two-step analysis. "First, we determine whether the claims at issue are directed to" an abstract idea. *Alice*, 134 S. Ct. at 2355. If so, in a second step we "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* (quotation marks and citation omitted) (alteration in original).

A

CAC asserts that claim 25, quoted above, is representative. Putting some of the generic computer elements aside, claim 25 is directed to a system for maintaining a database of information about the items in a dealer's inventory, obtaining financial information about a customer from a user, combining these two sources of information to create a financing package for each of the inventoried items, and presenting the financing packages to the user. Some claims contain additional details about the financing process: for example, the inventory database includes the dealer cost and sale price of each item; the customer information includes an available down payment amount; the system calculates a credit score for the customer; and the financing package includes a calculated

front-end profit for the dealer, an advance amount, and a down payment amount (claim 10 as dependent from claim 1, claim 26).[6]

The Board determined that the claims are directed to the abstract idea of "processing an application for financing a purchase." J.A. 16. We agree. Each of the claims is directed to the abstract idea of processing an application for financing a purchase. We see no meaningful distinction between this type of financial industry practice and "the concept of intermediated settlement" held to be abstract in *Alice*, 134 S. Ct. at 2356, or the "basic concept of hedging" held to be abstract in *Bilski v. Kappos*, 561 U.S. 593, 611 (2010).

Indeed, the '807 patent specification itself demonstrates that processing an application for financing a purchase is "a fundamental economic practice long prevalent in our system of commerce." *Alice*, 134 S. Ct. at 2356 (quoting *Bilski*, 561 U.S. at 611). The background portion of the specification explains that "[u]nder present methods for selling cars and trucks," "[t]he financing process begins with the salesperson . . . completing a credit application. This involves receiving detailed financial information from the customer . . . ." '807 patent, col. 1 ll. 23, 34–37. "The application typically also includes the price of the vehicle . . . , the amount of the down payment . . . ,

---

[6] The computer components have various other claimed abilities: for example, sorting financing packages by various criteria (claims 11–12, 22–23, and 32–33); obtaining and using a credit report related to the customer (claims 14 and 27); processing a sale (claim 15); collecting periodic payments from the customer (claim 17); allowing the dealer to receive a share of the payments collected from the customer (claims 18–20); calculating a dealer's back-end profits (claim 21); and recalculating financing terms (claims 16, 28, and 31).

and . . . the dealer's cost in obtaining the vehicle . . . . Once the application is completed, the salesperson sends the application to a lending institution for approval." *Id.* col. 1 ll. 39–46. At the lending institution, an "agent typically pulls a credit report on the customer . . . and scores the customer based on his credit history. . . . In the case that the financing institution agrees to extend financing, the transaction proceeds." *Id.* col. 1 ll. 51–54, 66–67. The specification continues to describe a known process that occurs when the first application is rejected: resubmitting applications to different lending institutions, submitting applications for other vehicles in the dealer's inventory, and submitting applications with changed financing terms. *Id.* col. 2 ll. 15–50.

CAC suggests that the claims are not abstract because they "*improve*[] *the functionality of the general purpose computer* by programming fundamentally new features." CAC Opening Br. 29. But this is so only in the sense that the claims permit automation of previously manual processing of loan applications. *See id.* at 27 ("There is no evidence of record that, prior to the '807 [p]atent, computers had been configured to automatically generate comprehensive reports of financing options. Instead, car dealerships secured financing for customers through . . . [a] series of manual steps." (citations omitted)). Our prior cases have made clear that mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology. In those cases, "the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("At best, the claims describe the automation of the fundamental economic concept of offer-based

price optimization through the use of generic-computer functions."). The invention's "communication between previously unconnected systems—the dealer's inventory database, a user credit information input terminal, and creditor underwriting servers," CAC Opening Br. 28, does not amount to an improvement in computer technology.

This conclusion is supported—not contradicted—by *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016). In *Enfish*, the court explained, "the first step in the *Alice* inquiry . . . asks whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1335–36. The claims of the '807 patent are plainly of the second category. The "focus of the claims" is on the method of financing, and the recited generic computer elements "are invoked merely as a tool." *Id.* The invention here is quite unlike the "self-referential table," which was a "specific improvement to the way computers operate," held to be not abstract in *Enfish*, 822 F.3d at 1336, and the "specific asserted improvement in computer animation, i.e., the automatic use of rules of a particular type" held to be not abstract in *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).

CAC also asserts that claim 25 is not directed to an abstract financial process, but rather to "configuring a computer system to combine data from multiple electronic data sources . . . to synthesize a comprehensive report of structures for a dealer and a creditor to co-finance a purchase." CAC Opening Br. 26. But even under CAC's view, the claim is abstract under our precedent. We have explained that "collecting information, including when limited to particular content (which does not change its character as information), [is] within the realm of abstract ideas." *Elec. Power Grp.*, 830 F.3d at 1353; *see also Content Extraction & Transmission LLC v. Wells Fargo Bank,*

*Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (identifying "the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory").

We have also explained that the output of data analysis can be abstract. "[M]erely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." *Elec. Power Grp.*, 830 F.3d at 1354. We have found particularly that data processing to facilitate financing is a patent-ineligible abstract concept. *See Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (holding that claims are abstract where they "recite nothing more than the collection of information to generate a 'credit grading' and to facilitate anonymous loan shopping"); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333–34 (Fed. Cir. 2012) (holding that a "computer-aided" method for "processing information through a clearinghouse" for car loan applications is patent ineligible).

B

At step two of the *Alice* framework, the Board concluded that the claims do not recite an inventive concept. Again, we agree. The use and arrangement of conventional and generic computer components recited in the claims—such as a database, user terminal, and server— do not transform the claim, as a whole, into "significantly more" than a claim to the abstract idea itself. *Alice*, 134 S. Ct. at 2360; *see also In re TLI Commc'ns*, 823 F.3d at 615 (holding that "vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention"); *Mortg. Grader*, 811 F.3d at 1324 (holding no inventive concept where "the claims 'add' only generic computer components such as an 'interface,' 'network,' and 'database'"). "We have repeatedly

held that such invocations of computers and networks that are not even arguably inventive are 'insufficient to pass the test of an inventive concept in the application' of an abstract idea." *Elec. Power Grp.*, 830 F.3d at 1355 (quoting *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353 (Fed. Cir. 2014)).

CAC asserts that "[p]rior to the '807 [p]atent, because computers were unable to perform" the claimed process, "automobile financing was manual, iterative, and laborious." CAC Opening Br. 9. Indeed, the specification explains that the iterative process, described above at step one, "of negotiating financing, especially with high risk borrowers, is labor intensive, difficult, and inefficient." '807 patent, col. 2 ll. 51–53. CAC suggests that the invention solves this problem because it "provides software that allows computers to supplant and enhance" the existing series of manual steps of securing financing— "a task they were previously not configured to perform." CAC Opening Br. 28.

But merely "configur[ing]" generic computers in order to "supplant and enhance" an otherwise abstract manual process is precisely the sort of invention that the *Alice* Court deemed ineligible for patenting. *See Alice*, 134 S. Ct. at 2357–59 ("[T]he relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer."); *see also RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1328 (Fed. Cir. 2017) (explaining that a valid claim may not "tell a user to take an abstract idea and apply it with a computer"). "[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *OIP Techs.*, 788 F.3d at 1363; *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("[O]ur precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an other-

wise abstract idea."); *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013) (en banc) (Lourie, J., concurring).

Significantly, the claims do not provide details as to any non-conventional software for enhancing the financing process. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) (explaining that "[o]ur law demands more" than claim language that "provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it"); *Elec. Power Grp.*, 830 F.3d at 1354 (explaining that claims are directed to an abstract idea where they do not recite "any particular assertedly inventive technology for performing [conventional] functions").

CAC also argues that the Board's decision is legally defective because the Board did not analyze the claim elements "as an ordered combination" to determine whether they recite an inventive concept. *Alice*, 134 S. Ct. at 2355. CAC calls our attention to this court's decision *BASCOM Global Internet Services., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016), where the court explained that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* at 1350.

Contrary to CAC's suggestion, the Board properly considered the claimed elements as an ordered combination and determined that the claims did not recite an inventive concept. *See, e.g.*, J.A. 23 ("We . . . conclude that the generic computer components recited in claim 10 do not transform the nature of the claim such that claim 10, *as a whole*, recites an inventive concept." (emphasis added)); J.A. 24 ("[C]laim 10 simply limits the method of claim 1 to a particular technological environment. . . . Claims 14 and 25 fare no better."). Tellingly, CAC does not clearly identify any particular inventive concept in the

ordered combination that it alleges the Board overlooked. Indeed, we see no inventive concept in these claims.

## CONCLUSION

We conclude that Westlake was not estopped from maintaining this CBM under 35 U.S.C. § 325(e)(1). We also conclude that claims 10–12 and 14–33 of the '807 patent are not directed to patent-eligible subject matter under 35 U.S.C. § 101. Accordingly, we affirm.

## AFFIRMED

## COSTS

Costs to Appellee.

# United States Court of Appeals
# for the Federal Circuit

_____

**CREDIT ACCEPTANCE CORP.,**
*Appellant*

**v.**

**WESTLAKE SERVICES,**
*Appellee*

_____

2016-2001

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. CBM2014-00176.

_____

MAYER, *Circuit Judge*, dissenting-in-part.

While I agree that the challenged claims are patent ineligible under 35 U.S.C. § 101, I respectfully dissent from the court's determination that we have jurisdiction to review a decision by the Patent Trial and Appeal Board ("board") to deny a motion to terminate a post-grant review proceeding as barred by 35 U.S.C. § 325(e)(1). The board's application of section 325(e)(1)'s estoppel provision in determining whether to institute or terminate review is "final and nonappealable," 35 U.S.C. § 324(e), and thus falls well beyond the reach of our appellate authority.

In interpreting 35 U.S.C. § 314(d) which, like 35 U.S.C. § 324(e), provides that "[t]he determination by the

Director whether to institute . . . review under this section shall be final and nonappealable," the Supreme Court made clear that this court, with certain narrow exceptions, has no jurisdiction to review determinations about the application and interpretation of statutes "closely tied" to the Patent Office's decision to institute review. *Cuozzo Speed Techs., LLC v. Lee*, – U. S. –, 136 S. Ct. 2131, 2141 (2016). The present appeal presents a run of the mill dispute about the interpretation of a patent statute—35 U.S.C. § 325(e)(1)—closely related to the board's decision to institute a second covered business method patent review ("CBM Review"). Section 325(e)(1) bars a petitioner from requesting or maintaining a proceeding before the Patent Office, including a CBM Review, challenging a claim on any ground that the petitioner raised, or reasonably could have raised, during an earlier review. This provision is "closely tied," *Cuozzo*, 136 S. Ct. at 2141, to the board's institution decision because when it applies, the board may not institute review on a petitioner's challenge to particular claims. Because the board's conclusion as to whether a petitioner is prohibited from bringing or maintaining a proceeding before the Patent Office is a central aspect of the determination to institute review, it falls squarely within the scope of the bar, imposed by 35 U.S.C. § 324(e), on appellate review of institution decisions. *See Husky Injection Molding Sys. Ltd. v. Athena Automation Ltd.*, 838 F.3d 1236, 1246 (Fed. Cir. 2016) (emphasizing that "statutes 'closely related' to the decision whether to institute are necessarily, and at least, those that define the metes and bounds of the . . . review process").

We confronted an analogous situation in *Husky*. There, the board rejected the patent holder's argument that assignor estoppel barred institution of inter partes review. *Id.* at 1240–41. On appeal, we held that we had no jurisdiction to review whether the board correctly resolved the assignor estoppel question, explaining that

the equitable doctrine of assignor estoppel is tied to the interpretation of 35 U.S.C. § 311(a), a statute which is closely related to the board's institution decision. *Husky*, 838 F.3d at 1246. We emphasized, moreover, that assignor estoppel does not impact the board's ultimate authority to declare claims unpatentable, but instead only prevents particular petitioners from challenging a patent. *Id.* at 1246–47. Because "any question concerning assignor estoppel necessarily implicates *who* may petition for review . . . such a question falls outside of the narrow exceptions to the otherwise broad ban on our review of the decision whether to institute." *Id.* at 1247; *see also Achates Reference Publ'g, Inc. v. Apple Inc.*, 803 F.3d 652, 657 (Fed. Cir. 2015) (holding that this court may not review the board's application of the 35 U.S.C. § 315(b) time bar because that "bar does not impact the Board's authority to invalidate a patent claim—it only bars *particular petitioners* from challenging the claim" (emphasis added)).

Just as we had no jurisdiction to review the board's application of assignor estoppel in *Husky*, we are likewise precluded from reviewing the board's application of the petitioner-specific estoppel provision at issue here. Like assignor estoppel, section 325(e)(1) estoppel only "implicates *who* may petition for review." *Husky*, 838 F.3d at 1247. To hold that this court can review the board's application of section 325(e)(1) estoppel is an unwarranted jurisdictional extension, inconsistent with the broad and unequivocal statutory bar on review of institution decisions.