NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NETSOC, LLC,**

*Plaintiff-Appellant*

**v.**

**MATCH GROUP, LLC, PLENTYOFFISH MEDIA ULC, HUMOR RAINBOW, INC.,**

*Defendants-Appellees*

---

2020-1195

---

Appeal from the United States District Court for the Northern District of Texas in No. 3:18-cv-01809-N, Judge David C. Godbey.

-------------------------------------------------------------------

**NETSOC, LLC,**

*Plaintiff-Appellant*

**v.**

**QUORA, INC.,**

*Defendant-Appellee*

---

2020-1430

---

Appeal from the United States District Court for the Northern District of California in No. 3:19-cv-06518-VC, Judge Vince Chhabria.

————————————

Decided: December 31, 2020

————————————

WILLIAM PETERSON RAMEY, III, Ramey & Schwaller, LLP, Houston, TX, argued for plaintiff-appellant.

ROBERT L. GREESON, Norton Rose Fulbright US LLP, Dallas, TX, argued for defendants-appellees in 2020-1195. Also represented by STEPHANIE DEBROW, Austin, TX; ERIK OWEN JANITENS, Houston, TX.

STEVEN MOORE, Kilpatrick Townsend & Stockton LLP, San Francisco, CA, argued for defendant-appellee in 2020-1430. Also represented by RICHARD W. GOLDSTUCKER, Atlanta, GA; JORDAN TRENT JONES, Menlo Park, CA; MEGAN ELIZABETH BUSSEY, New York, NY.

————————————

Before TARANTO, CHEN, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

NetSoc, LLC appeals the United States District Court for the Northern District of Texas's dismissal of certain patent infringement allegations against Match Group, LLC, PlentyofFish Media ULC, and Humor Rainbow, Inc. (collectively, "Match"), and the United States District Court for the Northern District of California's dismissal of certain patent infringement allegations against Quora, Inc. The Texas district court held the asserted claims of NetSoc's U.S. Patent No. 9,978,107 ineligible under 35 U.S.C. § 101, and the California district court similarly held the asserted claims of NetSoc's related U.S. Patent No. 9,218,591

ineligible under 35 U.S.C. § 101. We conclude that the claims of both the '107 and '591 patents are directed to patent-ineligible subject matter. Accordingly, we affirm the decisions of both district courts.

BACKGROUND

I

NetSoc sued Match for infringing all claims of the '107 patent and sued Quora for infringing all claims of the '591 patent. The '107 patent is a continuation of the '591 patent (collectively, the "asserted patents"), and the asserted patents share a common specification.[1] The asserted patents relate to "a system and method for establishing and using a social network to facilitate people in life issues." '107 patent col. 1 ll. 40–41. For example, the invention of the asserted patents addresses "problems and concerns that arise when individuals or families travel or relocate," such as "logistic problems, problems arising with assimilating family members in a community, and . . . roommate pairings." *Id.* at col. 2 ll. 6–12.

The specification discloses a computer system and methods that maintain a list "of participants who can assist in resolving issues at [a] particular geographic location." *Id.* at col. 2 ll. 21–23. A user may submit an inquiry related to a selected category of those issues. *Id.* at col. 2 ll. 24–30. That inquiry can be sent as a message to participants either through a service or directly to a participant selected by the user. *Id.* at col. 2 ll. 28–47. Users are "enabled to communicate with the selected participant(s) over an online medium," such that contact information of the participants "may be shielded from the user," *id.* at col. 8 ll. 50–58, or "blind" connections may be formed between

---

[1] When referencing the common specification, we cite to the '107 patent.

users and participants, *id.* at col. 13 ll. 18–20.  The performance of participants may be tracked by:

> (i) timing how long it takes for the identified issue resolver [(*i.e.*, a participant)] to get back to the user, (ii) if subsequent communications are exchanged between user and issue resolver, timing the responsiveness of the issue resolver to each user communication, (iii) receiving feedback from the user on how well the issue resolver resolved the user's issue, [or] (iv) other objective or subjective criteria for determining the effectiveness of the issue resolver for the user.

*Id.* at col. 9 ll. 60–67.

## II

Match moved the Texas district court to dismiss NetSoc's complaint, arguing that the '107 patent claimed patent-ineligible subject matter under § 101.  The district court granted Match's motion, concluding that the claims of the '107 patent are directed to an abstract idea, and that they fail to articulate an inventive concept.  *NetSoc, LLC v. Match Grp., LLC*, No. 3:18-CV-01809-N, 2019 WL 3304704, at *3 (N.D. Tex. July 22, 2019).  Particularly, the district court explained that the claims "are predicated on presenting results of data collection and analysis" and do not "require[] anything other than conventional computer hardware."  *Id.* at *2–3.  Similarly, Quora moved the California district court to dismiss NetSoc's complaint, arguing that the '591 patent claimed patent-ineligible subject matter under § 101.  There, the district court granted Quora's motion, determining that the claims of the '591 patent are directed to "the abstract idea of a social network," and that the claims' purported improvements to that social network "do not transform the idea into a patent-eligible application."  *NetSoc, LLC v. Quora, Inc.*, No. 19-CV-06518-VC, 2020 WL 415919, at *1 (N.D. Cal. Jan. 27, 2020).

NetSoc appeals both decisions. These cases were consolidated on appeal for oral argument. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We apply regional circuit law when reviewing a district court's dismissal for failure to state a claim. *XY, LLC v. Trans Ova Genetics, LC*, 968 F.3d 1323, 1329 (Fed. Cir. 2020). Both the Fifth Circuit and the Ninth Circuit review such dismissals de novo, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff. *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 290 (5th Cir. 2016); *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017).

I

Section 101 defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has held that this provision contains an important exception: "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

"[T]he Supreme Court articulated a two-step test for examining patent eligibility when a patent claim is alleged to involve one of these three types of subject matter." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1367 (Fed. Cir. 2020); *see Alice*, 573 U.S. at 217–18. The first step of the *Alice* test requires a court to "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S. at 218. "[T]he claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (quoting *Internet Pats. Corp. v. Active*

*Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).  If the claims are directed to a patent-ineligible concept, the second step of the *Alice* test requires a court to "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice*, 573 U.S. at 221 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72, 78–79 (2012)).  "This inventive concept must do more than simply recite 'well-understood, routine, conventional activity.'"  *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) (quoting *Mayo*, 566 U.S. at 79–80).

## II

We first consider the claims of the '107 patent.  Though we consider each claim for purposes of our § 101 analysis, we duplicate claim 1 here as an illustrative claim.

1. A method for establishing a social network, the method being implemented on a network computer system and comprising:

maintaining a list comprising a plurality of participants, wherein each participant in the plurality of participants corresponds to one or more individuals, wherein the list also includes information associated with at least one of each participant or the one or more individuals that correspond to each participant;

presenting a user with an interface from which the user makes a selection of a category from a plurality of categories;

in response to receiving the selection of the category by the user,

displaying, for the user, some of the information associated with each of multiple participants from the plurality of participants which match the

selection of the category by the user, while shielding contact information associated with each of the multiple participants;

wherein displaying some of the information associated with each of the multiple participants is based at least in part on a rating of individual participants in the plurality of participants;

enabling the user to send an inquiry message to one or more of the multiple participants, while shielding the contact information from the user, the contact information including any messaging identifier that is associated with each of the one or more participants;

tracking a response time of each of the one or more participants who received the message from the user; and

updating the rating associated with each of the one or more participants based at least in part on the tracked response time.

'107 patent col. 17 ll. 15–48.

We determine that, under *Alice* step one, the claims of the '107 patent are directed to the abstract idea of automating the conventional establishment of social networks to allow humans to exchange information and form relationships. The '107 patent claims recite steps for establishing a social network on a computer. The '107 patent specification acknowledges that social networks are a longstanding practice and that, "[u]nder a current approach, . . . a human resource department, or other internal relocation departments," may "facilitate the entire arduous process of relocation." *Id.* at col. 10 ll. 16–19. It goes on to explain that without support from these departments, someone "may spend a great deal of time conducting research through generic sources," but would ultimately have "no assistance, or guidance, other than other general

non-personal assistance." *Id.* at col. 11 ll. 6–17. Thus, in providing "access to a software suit[e]" to overcome not having this assistance in the relocation process, *id.* at col. 11 ll. 20–21, the invention claimed in the '107 patent "qualifies as an 'abstract idea' for which computers are invoked merely as a tool," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016); *see also Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("[M]ere automation of manual processes using generic computers does not constitute a patentable improvement.").

Moreover, the claimed invention of establishing a social network is an abstract idea "pertaining to methods of organizing human activity." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (citing *Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (finding the claim at issue "not meaningfully different from the ideas found to be abstract in other cases before the Supreme Court and our court involving methods of organizing human activity")). Namely, "maintaining" a list of participants, "presenting" a user with selectable categories, "displaying" participant information based on the selected category, "shielding" contact information, "enabling" the user to send a message to participants, "tracking" a response time of participants, and "updating" participant ratings are all human activities that the claims more efficiently organize by applying them to a "network computer system." '107 patent col. 17 ll. 15–48.

At *Alice* step two, we do not discern "an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 72, 78–79). The claim limitations fail to add a technological improvement to the computer or otherwise provide "something more" to "transform" the claims. *See id.* at 217. Rather, the '107 patent claims are quintessential "apply it with a computer" claims. *See id.* at 223

("Stating an abstract idea while adding the words 'apply it with a computer' simply combines those two steps, with the same deficient result.").

We find unpersuasive NetSoc's arguments that the "rating" limitations—"tracking a response time of each of the one or more participants who received the message from the user" and "updating the rating associated with each of the one or more participants based at least in part on the tracked response time," '107 patent col. 17 ll. 43–48—render the claims patent eligible. Neither tracking a participant's response time nor using that response time to update a participant's rating represents a technological improvement that would render the claims non-abstract. Indeed, the specification discloses that, without the invention, a "human resource department" can handle the "entire arduous process of relocation," *see id.* at col. 10 ll. 17–19, which would include making judgments about who might be a good source of information based on response time. Nor do the "rating" limitations, or any other limitation, otherwise provide an inventive concept that transforms the claims into an eligible application.

## II

We next consider the claims of the '591 patent. Again, though we consider each claim for purposes of our § 101 analysis, we duplicate claim 1 here as an illustrative claim.

> 1. A method for establishing a social network, the method comprising:
>
> maintaining a list comprising a plurality of participants, wherein each participant in the plurality of participants corresponds to one or more individuals, wherein the list also includes information associated with at least one of each participant or the one or more individuals that correspond to each participant;

presenting a user with a plurality of categories from which the user may make a selection of a category from the plurality of categories;

receiving the selection of the category by the user;

in conjunction with the selection of the category, receiving an electronic communication from the user for an unidentified respondent, wherein the electronic communication contains an inquiry of the user;

after receiving the selection of the category by the user, selecting one or more participants from the list to receive the electronic communication, wherein selecting is based at least in part on the selection of the category or the information associated with at least one of each participant or the one or more individuals that correspond to each participant;

sending the inquiry to the selected one or more participants;

receiving a response to the inquiry from the selected one or more participants, the response from each of the one or more participants including biographical information about that participant;

publishing at least a portion of the response from each of the selected one or more participants for other users to view, wherein publishing is performed without identifying the user but includes providing biographical information about the participant who provided the response;

tracking feedback for each of the selected one or more participants based at least in part on the published portion of the response, including determining a rating from the user for at least one of the selected one or more participants.

'591 patent col. 16 l. 63–col. 17 l. 34.

We conclude that the claims of the '591 patent are also directed to an abstract idea under *Alice* step one. As with the claims of the related '107 patent, the '591 patent claims are directed to automating the longstanding practice of establishing a social network to allow humans to exchange information and form relationships. The claim limitations of "maintaining" a list of participants, "presenting" a user with selectable categories, "receiving" the user's category selection, "receiving" an inquiry from the user, "selecting" a participant to receive the user's inquiry, "sending" the inquiry to the participant, "receiving" a response to the inquiry from the participant, "publishing" the response, and "tracking" feedback of the participants, '591 patent col. 16 l. 63–col. 17 l. 34, are directed to automating a longstanding, well-known method of organizing human activity, similar to concepts previously found to be abstract. *See In re TLI Commc'n LLC Pat. Litig.*, 823 F.3d at 613; *see also Intellectual Ventures I LLC*, 792 F.3d at 1367.

Turning to *Alice* step two, we also do not discern "an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 72). As with the '107 patent claims, the '591 patent claims are quintessential "apply it with a computer" claims. *See id.* at 223. We are unpersuaded by NetSoc's arguments that the "rating" limitation in the '591 patent recites an improvement to the underlying technology and thus renders the claims patent eligible. Contrary to NetSoc's contention, the limitation "tracking feedback for each of the selected one or more participants based at least in part on the published portion of the response, including determining a rating from the user for at least one of the selected one or more participants," '591 patent col. 17 ll. 30–34, is itself directed to an abstract idea. As we have held, "[t]he abstract idea itself cannot supply the inventive concept." *Trading Tech. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019)

(citing *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1171 (Fed. Cir. 2018)).

## CONCLUSION

We have considered NetSoc's remaining arguments, including its arguments that the district courts erred by ignoring factual issues precluding a determination of ineligibility at the Rule 12(b)(6) stage, and find them unpersuasive. For the foregoing reasons, we affirm both district courts' decisions to dismiss, as the asserted patents claim unpatentable subject matter.

## AFFIRMED

## COSTS

No costs.